## TALLMAN, Administrator, vs. FITCH.

*April 1 — April 20, 1880.*

*Rule as to reversal.*

The only evidence in this case whose rejection is complained of, was immaterial; and, there being no such preponderance of evidence against the findings of the court below as would warrant their reversal, the judgment is affirmed.

APPEAL from the Circuit Court for *Rock* County.

Action for rent. Plaintiff's intestate, to whom the premises belonged, died in May, 1878. At that time defendant had been in possession of the premises for a number of months, and had been paying at the rate of $700 per annum, the payments being made monthly in advance. After the death of his intestate, plaintiff went lawfully into possession of the premises as administrator. After May 1, 1878, it was agreed that the monthly payments should be at the rate of $650 per annum. Defendant paid rent at that rate to the close of August, when he vacated the premises and refused to pay any further rent. Some time after the end of November, 1878, plaintiff brought this action for the rent of September, October and November of that year. The complaint alleged that the defendant had been in under a lease for a term of one year from May 1, 1878; while defendant claimed in his answer that he had been merely a tenant from month to month; and this was the only issue.

It appeared that defendant, besides his store in Janesville, had one at Madison; that he "divided his time" between the two places; that his own residence was at Madison; and that the Janesville store was conducted for him by one Carrier. Plaintiff testified, in substance, that toward the end of June, 1878 (before he was appointed administrator, and while he was acting for his brother Edgar and himself as heirs-at-

law), there were two talks between Carrier and himself, which ended in his writing a letter to defendant at Madison. This letter, dated June 28, 1878, was signed in the name of himself and his brother, for the estate; and, so far as important here, was in these words: "In conversation with your agent, a day or two since, in relation to the rent, and after consultation and reflection, have decided to make the rent $650 for the year ending May 1, 1879." No answer was received to this letter; but rent was paid thereafter up to the first of September at the rate therein mentioned. The witness further testified as follows: "I did not see *Fitch*, or have any conversation with him, after writing the letter, until he ceased to occupy the store. I saw Carrier in front of the store a few days after I wrote the letter. He said he would like to have the rent matter fixed, and then he said, 'What will you fit us up the express office for?' I said, 'How do you want it fitted up?' He said, 'We want plate glass windows and new floor, and all fixed up nice.' I said, 'How long will you take it for?' He said, '*Fitch* will not take it, only for a year — will not hire a store of any one for more than a year;' and I said, 'Do you suppose we would fit up a store for $500 to rent to you for only one year?' After talking some time, I said to him, 'I wrote to *Mr. Fitch* the other day, and we made a division between what you wanted to pay and what he [we?] wanted you to pay.'"

It appeared, further, that on the 31st of July, 1878, a written notice was served upon the plaintiff, signed by the defendant "per Carrier," to the effect that defendant would surrender possession of the premises on the 31st of August following; and that plaintiff thereupon wrote to defendant at Madison, reciting said notice, and adding: "On the 28th of June, 1878, I sent you a proposition to rent you the store for $650. This proposition was accepted, and two months' rent paid in pursuance of it. . . . My understanding is, that you have leased the store until May 1, 1879, at $650 per year."

The defendant testified in his own behalf: "I first learned that plaintiff claimed that I had rented the store for a definite time, when I received a letter written in answer to my notice. I then directed Carrier to see him at once. After the 1st of May, when I left here, I instructed Carrier in regard to negotiating for the rent of the premises." Q. "State what your instructions were to Carrier about negotiating for the future occupation of the store." On plaintiff's objection this evidence was ruled out as immaterial. Q. "Did Carrier at any time inform you that he had made any arrangement with *Tallman* for the store, for any definite time?" Ruled out. Defendant then offered to prove that he never authorized Mr. Carrier to negotiate for the premises for any definite time, and that the only instructions he gave him were to get the rent reduced; but the evidence was rejected. The remaining evidence will not be stated.

The court found as a fact, among other things, that defendant occupied under a lease for a year, ending May 1, 1879. From a judgment in plaintiff's favor, the defendant appealed.

The cause was submitted on the brief of *Winans & McElroy* for the appellant, and that of *A. A. Jackson* for the respondent.

ORTON, J. The only question raised upon the record for the consideration of this court, not of fact, is the admissibility of the evidence relating to the instructions of the appellant to the clerk Carrier, and Carrier's authority as the agent of the appellant, in respect to changing the terms of the lease. This evidence was inadmissible, on the ground of its immateriality. The respondent did not claim, and there was no testimony to show, that any contract of lease or change of lease was made by the agent Carrier.

It is claimed that the findings of fact by the circuit court, and which were excepted to by the learned counsel of the appellant, and by which the new lease was established, were

based upon the proposition of the respondent made directly to the appellant by letter, and its acceptance and the payment of rent in accordance with it. After the receipt of the proposition by the letter dated June 28, 1878, the appellant paid several months' rent at the changed rate of the new lease, and thereby acquiesced in its terms, if he did not ratify expressly the new lease by making such payments without any refusal of the proposition, or taking any exceptions to the terms of the lease proposed in the letter. It is true that Carrier testifies that, when the respondent informed him of the proposition sent to the appellant by the letter, he said the appellant would not accept it. This, at most, was the mere expression of an *opinion* by Carrier that the appellant would not accept the proposition, without rejecting it as the agent of the appellant, or claiming any authority to reject it; and after this, this same agent paid for his principal, the appellant, the rent according to the terms of the proposed new lease.

We think the circuit court may well have found, from these facts, the new lease as claimed in the complaint; at least, there is no such preponderance of the evidence against the findings upon this question, as would warrant this court in reversing them.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.